COUNTRY CASUALTY INSURANCE COMPANY, Plaintiff-Appellee, v. GARY J. WILSON *et al.*, Defendants-Appellants.

Third District    Nos. 3—85—0406, 3—85—0429 cons.

Opinion filed May 21, 1986.—Rehearing denied July 8, 1986.

Michael J. Martin, of Dunn, Leinenweber & Dunn, Ltd., of Joliet, for appellants.

Robert O. Duffy and Michael W. Rathsack, both of Beverly, Pause, Duffy & O'Malley, of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff, Country Casualty Insurance Company, filed the instant action seeking a declaration that it was not required to defend and indemnify defendant Gary Wilson against a suit filed by defendant Scott Taylor. The third defendant, State Farm Insurance Company, paid $50,000 to Taylor by virtue of an uninsured motorist policy. Hence, a declaration of no coverage would defeat State Farm's subrogation rights against Country Casualty. Because we reverse on a narrow evidentiary ground, only those facts necessary to consideration of that issue will be set forth.

Gary Wilson had a policy with Country Casualty on a 1976 Audi. The policy period was from April 15, 1983, to October 15, 1983. Gary made a claim for damage done to the Audi by alleged acts of vandalism. As of September 16, the claim had not been recognized by Country Casualty.

On September 8, Gary Wilson purchased a 1977 Chevy truck. He took no steps to insure the truck at the time of purchase.

On September 16, Gary's mother, Rose Marie Wilson, came to the Country Casualty office in Joliet to discuss the claim for the Audi. Mrs. Wilson apparently handled all of her son's dealings with Country Casualty. Present that day were Keith Read, a Country Casualty agent in Joliet and Charles Hull, the agency manager. The subject of the 1977 Chevy truck came up. Read told Mrs. Wilson that she should either transfer coverage from the Audi or get a new policy. She was told that the policy would have to be obtained within 30 days of purchase or before the expiration date of the Audi policy (October 15), whichever was later.

According to the allegations of the complaint in the resulting lawsuit, an intoxicated Gary Wilson drove the Chevy truck off the road on Monday, October 17, at 1:30 a.m. Scott Taylor, a passenger, was rendered a quadriplegic as a result of the accident.

At this point, the stories of Keith Read and Rose Marie Wilson diverge. Read testified that following the September 16 meeting, his next contact with Mrs. Wilson was at approximately 11 a.m. on October 17. She came in with a check dated October 14 seeking to transfer the policy from the Audi to the Chevy truck. The transfer was effected at 11:30 a.m. She said nothing at the time about having made the transfer by phone the previous Friday.

Mrs. Wilson testified that she phoned the Joliet office on October

14 to transfer the policy. She was told that such a transfer was possible and to come in with her premium at her earliest convenience. She testified to making out a check shortly thereafter. She allegedly came in the following Monday to provide them with the registration number of the Chevy truck. Read testified that only the vehicle identification number is necessary to transfer a policy of insurance.

Country Casualty alleged that the transfer policy was procured as a result of either the fraud of Mrs. Wilson (assuming that she was aware of the accident) or, alternatively, a mutual mistake of fact, since neither party was aware of the accident. Responding to a special interrogatory, the jury found that Mrs. Wilson did not call Country Casualty on October 14 to request a transfer of coverage. Based on this and other findings, the court entered judgment on behalf of Country Casualty.

In support of his story that Mrs. Wilson never called on October 14, Read testified that he spoke to all five of his office girls about whether they received a call from Mrs. Wilson on that date. He stated that none of them had received such a call. Counsel for State Farm objected on hearsay grounds, but the objection was overruled.

■ This ruling was reversible error. The issue was whether a conversation occurred. What Read's employees told him, *i.e.*, that the conversation had not occurred, was offered to prove just that. That is textbook hearsay. In this case, where the outcome hinged upon the relative credibility of Read and Mrs. Wilson, the injection of testimony which substantiated Read's story from "witnesses" whose credibility could not be tested was highly prejudicial.

Country Casualty proffers several reasons why this is not reversible error.

■ The first claim is that any reversal should operate only to the benefit of State Farm, because it was the only party to object. It is ordinarily the case that each party must make his own objection to preserve a point for appeal. (*Martino v. Barra* (1973), 10 Ill. App. 3d 97, 293 N.E.2d 745.) The rule should not govern here, however. In most cases where the rule is properly applied, the nonasserting party, usually a codefendant, represents interests adverse to the asserting party. In such a case, it is every man for himself in protecting his record. Here, the record is clear that while the various defendants are different parties raising nonidentical arguments, there was a unified front on the principal issue of the transfer of policies. Hence, there is no sound reason for requiring the trial court to sit through a redundant chorus of parroted objections on every contested evidentiary issue.

■ Country Casualty next argues that the admission of the challenged testimony was harmless because identical testimony came in without objection. Read testified that he had looked at all of his employees' message books and found no reference to Mrs. Wilson's call. Because these records "absolutely" would have shown if the call had come in, an unobjectionable duplication of the hearsay occurred. Thus, the hearsay would be merely cumulative and not prejudicial.

We do not agree. There is a marked difference in probative value between what Read's employees told him and what their records showed. The declarations of Read's employees that no call occurred were absolute and conclusive, particularly because they were not subject to impeachment. The absence of records can indicate any number of things, including oversight, misdating and misnomer. Consequently, the error inherent in the hearsay was not attenuated by the subsequent admission of unobjectionable hearsay.

■ Country Casualty also contends that Read was relating only the fact that a conversation did not occur. Ordinarily, testimony introduced to prove the existence of a conversation rather than its contents is not hearsay. Here, however, the issue is the occurrence or nonoccurrence of a conversation. The declaration of an absent third party, related by a live witness, that this conversation did not occur is classic hearsay.

■ Finally, Country Casualty claims that the evidence was introduced not for its truth but as anticipatory impeachment of Mrs. Wilson's testimony that the October 14 conversation occurred. This argument is misguided. The testimony was offered to prove the ultimate fact in this controversy, namely, that nothing occurred before October 15 to extend coverage to the 1977 Chevy.

Although we reverse for a new trial, we are constrained to address a lingering controversy over another critical piece of testimony. Country Casualty called the nurse who treated Gary Wilson following the accident. She testified to having no independent recollection of Wilson's outpatient hospital stay. Her notes, however, reveal that Wilson's mother was contacted at 10:35 a.m. This is obviously an invaluable impeachment of Mrs. Wilson's testimony that she was unaware of the accident when she met with Read on October 17.

Defendants objected that these notes were hearsay and without foundation for showing that Mrs. Wilson was the party to whom the nurse spoke. The nurse, however, laid the appropriate foundation for admission of the notes as past recollection recorded, thus eliminating the hearsay problem. The conclusion that it was the mother to whom the nurse spoke when she dialed the number given her allegedly was

without foundation. Nonetheless, the nurse testified that the notes were accurate when recorded.

■ We recognize that the foundation question is essentially incapable of resolution since the nurse is without independent recollection to establish the identity of the recipient of the call. At this point, though, we must fall back on the fact that an adequate foundation was laid for the notes. The conclusion contained within the notes is subject to cross-examination. Her absence of memory goes to the weight of this evidence and can be brought to the jury's attention as a form of impeachment.

Accordingly, the judgment of the circuit court of Will County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SCOTT, P.J., and BARRY, J., concur.